**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 19-cv-01700-NYW

MARY CHARNEY,

      Plaintiff,

v.

UNITED AIRLINES, INC.,

      Defendant.

---

**MEMORANDUM OPINION AND ORDER**

---

Magistrate Judge Nina Y. Wang

      This matter comes before the court on the Motion for Summary Judgment (or "Motion") filed by Defendant United Airlines, Inc. ("Defendant" or "United"). [#28; #29, filed May 8, 2020]. Pursuant to the Order of Reference dated June 26, 2019 [#15], this civil action was assigned to the undersigned Magistrate Judge for all purposes. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; D.C.COLO.LCivR 72.2. Plaintiff Mary Charney ("Plaintiff" or "Ms. Charney") has responded [#36] and Defendant has replied [#37]. This court finds that oral argument will not materially assist in the disposition of the instant Motion. Being fully advised of the premises, this court respectfully **GRANTS** Defendant's Motion for Summary Judgment.

**BACKGROUND**

      On May 29, 2019, Ms. Charney[1] initiated this action in Arapahoe County District Court against United. [#3]. She alleges a single claim for wrongful discharge in violation of public

---

[1] Ms. Charney initiated this action pro se, and currently proceeds pro se. *See* [#3, #41]. But she has engaged counsel on a limited basis twice in this action, including drafting her First Set of Discovery [#20; #23] and to respond to the instant Motion for Summary Judgment [#36 at 1; #38; #39]. Because she was represented for the purposes of responding to this Motion, the court does

policy ("wrongful discharge" or "retaliatory discharge") stemming from the termination of her employment with United on September 5, 2017.  [#3 at ¶¶ 8, 27].  Ms. Charney claims that United wrongfully terminated her in retaliation for asserting her right to apply for and receive workers' compensation benefits following a workplace injury sustained on August 7, 2017.  *See generally* [*id.*].

On June 11, 2019, United removed this action to the District Court for the District of Colorado. [#1].  The Parties proceeded through discovery and, on May 8, 2020, United filed the instant Motion for Summary Judgment.  *See* [#28].  In moving for summary judgment in its favor, United contends that it is entitled to summary judgment because United terminated Ms. Charney's employment after she falsified the circumstances surrounding her alleged workplace injury. [*Id.*].  Accordingly, argues United, Ms. Charney cannot meet her burden to show a causal connection between her workers' compensation claim and subsequent termination.  [*Id.*].  Ms. Charney counters that genuine disputes of material fact exist, precluding summary judgment. [#36].

## LEGAL STANDARDS

### I.   Summary Judgment

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter–Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).  "A 'judge's function' at summary judgment is not

---

not extend to her Response the liberal construction ordinarily afforded pro se litigants. *Cf. Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Regardless, pro se litigants are not exempt from complying with procedural rules or satisfying substantive law as is required of represented parties. *See Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.2 (10th Cir. 2008) (observing that a party's pro se status does not relieve him of the obligation to comply with procedural rules); *Dodson v. Bd. of Cty. Comm'rs*, 878 F. Supp. 2d 1227, 1236 (D. Colo. 2012).

'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 249 (1986)). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or, conversely, is so one-sided that one party must prevail as a matter of law. *Anderson,* 477 U.S. at 248–49. *See also Stone v. Autoliv ASP, Inc.,* 210 F.3d 1132, 1136 (10th Cir. 2000); *Carey v. U.S. Postal Serv.,* 812 F.2d 621, 623 (10th Cir. 1987). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party. *Anderson,* 477 U.S. at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

In reviewing a motion for summary judgment, the court views all evidence in the light most favorable to the non-moving party. *See Garrett v. Hewlett-Packard Co.,* 305 F.3d 1210, 1213 (10th Cir. 2002). However, the nonmovant "may not rest upon mere allegation or denials of [the] pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. Conclusory statements based merely on speculation, conjecture, or subjective belief are not competent summary judgment evidence. *See Bones v. Honeywell Int'l, Inc.,* 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [its] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed. 1998). Ultimately, however, the court may not enter summary judgment unless Defendant carries its

burden under Rule 56 of the Federal Rules of Civil Procedure. *See Reed v. Bennett*, 312 F.3d 1190, 1194-95 (10th Cir. 2002). *See also* Fed. R. Civ. P. 56(a).

## II.     Retaliatory Discharge in Violation of Public Policy

Colorado law presumes that an employment relationship is terminable at will by either party. *See Mullin v. Hyatt Residential Grp., Inc.*, 82 F. Supp. 3d 1248, 1251-52 (D. Colo. 2015) (citing *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 105 (Colo. 1992)). However, Colorado courts recognize an exception to the at-will employment relationship if an employee's termination stems from her exercise of a job-related right. *See Crawford Rehab. Servs., Inc. v. Weissman*, 938 P.2d 540, 547, 551-52 (Colo. 1997). To establish a prima facie case for retaliatory discharge in the exercise of a job-related right such as workers' compensation benefits, a plaintiff must show that: (1) she was employed by the defendant; (2) the defendant discharged the plaintiff; and (3) the plaintiff was discharged for exercising a job-related right or privilege to which she was entitled. *Brown v. Premier Roofing, LLC*, 173 F. Supp. 3d 1181, 1184 (D. Colo. 2016) (applying Colorado law); *Baros v. Adv. Logistics USA W., LLC*, 09-cv-00012-CMA-BNB, 2010 WL 1416812, at *6 (D. Colo. Apr. 8, 2010).

To satisfy the third element of her prima facie case, a plaintiff must demonstrate a causal connection between her termination and her exercise of a job-related right. *Id.* The Workmen's Compensation Act of Colorado, Colo. Rev. Stat. §§ 8-40-101 *et seq.*, affords Colorado employees the statutory right to be compensated by their employers for work-related injuries. *Aman v. Dillon Co., Inc.*, No. 11-c-v-02973-JLK, 2014 WL 958712, at *16 (D. Colo. Mar. 11, 2014) (citing *Lathrop v. Entenmann's, Inc.*, 770 P.2d 1367, 1372 (Colo. App. 1989); *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 108 (Colo. 1992)). An employer's retaliation against an employee for exercising her statutory right to workers' compensation gives rise to a common law cause of action

4

for wrongful discharge in violation of public policy. *Id.* (citing *Lathrop*, 770 P.2d at 1373).   In the workers' compensation context, a plaintiff must "present evidence that [her] termination was causally connected to [her] filing of benefits under workers' compensation." *Id. See also Wehrley v. Am. Family Mut. Ins. Co.*, 513 F. App'x 733, 743 (10th Cir. Mar. 18, 2013) (unpublished) ("Colorado's case law regarding this claim is not well developed, but the claim at the very least requires evidence of a causal connection between the exercise of worker's compensation rights and the firing.").[2]

## UNDISPUTED MATERIAL FACTS

The following undisputed material facts are drawn from the record before the court.   In some instances, a party has disputed the proffered material fact, but an examination of the record finds that such dispute is not properly supported by evidence in the record.   Where that is the case, the court has noted the dispute and its analysis.

1.      Ms. Charney was employed by United as a Security Agent – Catering Operations at Denver International Airport from November 2, 2015 to September 5, 2017.   [#28 at ¶ 1; #36 at ¶ 1].

2.      Ms. Charney's job duties included monitoring all phases of catering assembly in the catering facility; inspecting food and beverages, serving utensils, and catering equipment before loading the same into catering vehicles; and conducting internal kitchen inspections.[3]   [#28 at ¶ 2; #36 at ¶ 2; #28-1].

---

[2] The Parties dispute the standard applicable to the third element of a retaliatory discharge claim and the applicability of the *McDonnell-Douglas* burden-shifting test.   I address these arguments below.   *See infra* pages 20-24.

[3] In Response, Plaintiff challenges Defendant's assertion that she was responsible for monitoring all areas for potential security risks and/or preparing daily reports thereon. [#36 at ¶ 2; #36-1].   The court finds this difference immaterial for purposes of the instant Motion.

3.     At the beginning of Ms. Charney's employment with United, she reported to Security Manager Dale Wiechelman ("Mr. Wiechelman") and in the summer of 2017 began reporting to Security Manager Brad Hock ("Mr. Hock").  [#28 at ¶ 3; #36 at ¶ 3].

4.     United's "Working Together Guidelines" (or "WTG") apply to all United employees, identify United as an at-will employer, and state that policies set forth in the WTG do not alter or modify the at-will relationship.  [#28 at ¶ 1; #36 at ¶ 1; #29 at 160].

5.     The "Working Together Expectations" policy set forth in the WTG requires United employees to "be truthful in all communications," "act in ways that reflect favorably upon the company," and "use good judgment and open communication in all decisions." [#28 at ¶ 5; #36 at ¶ 5; #29 at 163-64].

6.     Ms. Charney agrees that United is justified in disciplining and/or terminating an employee who violates the provisions set forth in the WTG, [#28 at ¶ 6; #36 at ¶ 6; #28-2 at 7:24-8:4], including by (a) acting in a way that does not reflect favorably upon the company [#28 at ¶ 6; #36 at ¶ 6; #28-2 at 10:8-12]; (b) failing to use good judgment [#28 at ¶ 8; #36 at ¶ 8; #28-2 at 10:20-23]; or (c) failing to use open communication in all decisions [#28 at ¶ 9; #36 at ¶ 9; #28-2 at 11:3-7].

7.     United requires its employees to "immediately report any workplace injury or illness, regardless of severity, to [the employee's] supervisor or manager at the time of occurrence." [#28 at ¶ 10; #36 at ¶ 10; #37 at ¶ 10; #28-1 at 3].

8.     Ms. Charney agrees that there is a significant benefit from timely, accurate, and detailed reporting of a workplace injury. [#28 at ¶ 11; #36 at ¶ 11; #28-2 at 175:7-14].

9.     Per United policy, an injured employee's supervisor is responsible for investigating the incident that caused an alleged workplace injury. [#28 at ¶ 12; #36 at ¶ 12; #37 at ¶ 12; #29-1

at 3].

10.     On July 7, 2016, Ms. Charney sustained a workplace injury when she backed into a service cart. [#28 at ¶ 13; #36 at ¶ 13; #28-3].

11.     Ms. Charney subsequently file a workers' compensation claim related to her July 2016 injury without interference or discouragement from United. [#28 at ¶¶ 14-16; #36 at ¶¶ 14-16; #28-2 at 127:1-16, 128:7-12].

12.     In October 2016, Ms. Charney received a 2.28% pay increase. [#28 at ¶ 17; #36 at ¶ 17; #28-4].

13.     On August 7, 2017, Ms. Charney was scheduled to work a promotion from 11:00 a.m. to 12:00 p.m. and an overtime shift from 1:00 p.m. to 8:30 p.m. [#28 at ¶ 18; #36 at ¶ 18; #28-8 at ¶ 4].

14.     At some time that day, Ms. Charney immediately reported a workplace injury to her left finger to her "Lead," Haileysus Woledemiariam ("Mr. Woledemiariam"), who instructed Ms. Charney to wait until her break to report the injury.[4] [#36 at ¶ 19; #36-1 at ¶¶ 5-6].

15.     That same day, at approximately 3:00 p.m., Ms. Charney reported her workplace injury to Mr. Hock and explained that she had injured her left middle finger placing a "Gotcha Card"[5]—otherwise known as Safety Reward Cards—into a deposit box outside the Safety Office.[6]

---

[4] United challenges this fact on Reply, asserting that Ms. Charney's affidavit improperly contradicts her previous deposition testimony. [#37 at ¶ 19].  For the reasons addressed in greater detail in the following section, *see infra* pages 15-20, I disagree with United and find this fact undisputed.

[5] While United states that Ms. Charney claimed she was injured placing multiple Gotcha Cards in the deposit box, [#28 at ¶ 19], Ms. Charney states that she placed a single Gotcha Card in the box at the time of her injury, [#36 at ¶ 19]. This fact is ultimately immaterial to the court's analysis, but drawing all inferences in favor of Ms. Charney, I describe it as a single Gotcha Card.

[6] On Reply, Defendant notes that Plaintiff fails to cite to specific paragraphs of her affidavit to support the additional alleged facts set forth in Plaintiff's Response; argues that Plaintiff's affidavit

[#28 at ¶ 19; #36 at ¶ 19].

16.     Mr. Hock instructed Ms. Charney to report her injury to the Safety Office immediately. [#28 at ¶ 20; #36 at ¶ 20; #28-8 at ¶ 6].

17.     Ms. Charney subsequently met with a Safety Coordinator, who provided Ms. Charney with an Employee Statement Form and instructed her to fill it out before she left for the day; relayed this information to Mr. Hock; and per instructions from others, waited to complete the Statement until the end of her shift.[7]  [#36 at ¶ 19; #36-1 at ¶¶ 5-6].

18.     At approximately 8:30 p.m., Ms. Charney completed, signed, and submitted a company-issued Employee Statement Form ("Statement") documenting the incident that allegedly caused injury to Ms. Charney's left middle finger. [#28 at ¶ 21; #36 at ¶ 21; #28-6].

19.     In her Statement, Ms. Charney reported that the incident occurred at 1:20 p.m. on August 7, 2017. [#28 at ¶ 22; #36 at ¶ 22; #28-6].

20.     Ms. Charney admits that the time of injury set forth in her Statement is not accurate, [#28 at ¶ 23; #36 at ¶ 23; #28-2 at 187:9-19], but "because she could not recall the exact time of the injury, she estimated the time at the direction of Mr. Thomas Ready,"[8] [#36 at ¶ 21; #36-1 at ¶

---

(taken as true) does not fully support the additional facts alleged and conflicts with her deposition testimony; and "moves to strike the affidavit because it is an attempt to create a sham issue of fact." [#37 at ¶ 19 (citing *Wolfe v. US Bank Nat. Ass'n*, No. 11-cv-03111-REB-KLM, 2012 LEXIS 173106, at *9-10 (D. Colo. Dec. 5, 2012))].  Because United may not seek relief in a response, as opposed to by separate motion. *see* D.C.COLO.LCivR 7.1(d) ("A motion shall not be included in a response or reply to the original motion."), the court construes Defendant's challenges to Plaintiff's affidavit as arguing that her averments are incompetent evidence at summary judgment and should be disregarded, and considers the foregoing arguments in the following section, *infra* pages 15-20.

[7] United challenges this fact on Reply, asserting that Ms. Charney's affidavit improperly contradicts her previous deposition testimony. [#37 at ¶ 19].  For the reasons addressed in greater detail in the following section, *see infra* pages 15-20, I disagree with United and find this fact undisputed.

[8] United notes that although Ms. Charney alleges in her Complaint that she spoke with United Supervisor Thomas Ready ("Mr. Ready") about her injury and advised him of her uncertainty

8].

21.    Since submitting her Statement, Ms. Charney recognizes that rather than stating an exact time therein, she should have indicated that she did not know the time of injury. [#28 at ¶ 24; #36 at ¶ 24; #28-2 at 186:10-17].

22.    On August 8, 2017, Ms. Charney filed a workers' compensation claim related to the August 7 incident and sought treatment for her injury at Concentra, United's workers' compensation healthcare provider. [#28 at ¶ 25; #36 at ¶ 25].

23.    United did not interfere with or discourage Ms. Charney from filing her workers' compensation claim. [#28 at ¶¶ 26-27; #36 at ¶¶ 26-27; #28-2 at 125:7-10, 125:20-23].

24.    On August 11, 2017, during a meeting with Safety Supervisor Susan Eckman ("Ms. Eckman") and Mr. Hock to investigate the circumstances of her workplace injury, Ms. Charney informed United that she placed a single Gotcha Card into the deposit box; demonstrated how she injured herself; and stated that "[she] got [her] fingers in then, well ya know."[9] [#28 at ¶ 28; #28-8 at ¶ 7; #36 at ¶ 28].

25.    During the August 11, 2017 meeting, Mr. Hock asked Ms. Charney whether 1:20 p.m. was the exact time of the incident or if the incident could have occurred five minutes before or after the time written on Ms. Charney's Statement.[10] [#28 at ¶ 29; #36 at ¶ 29; #28-8 at ¶ 7].

---

about the exact time of the incident, and was allegedly instructed by Mr. Ready to "just guess" the time, [#3 at ¶ 17], Ms. Charney failed to include any of this information in any report she submitted to United regarding the incident. [#28 at ¶ 24 n.2 (citing [#28-2 at 188:25-189:3])]. United does not, however, address the underlying factual assertion that Mr. Ready so instructed Ms. Charney. *See* Fed. R. Civ. P. 56(e)(2) ("If a party fails to . . . properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposed of the motion.").

[9] United contends that Ms. Charney "never directly stated that she injured herself putting a Gotcha Card into the deposit box," [#28 at ¶ 28], which Ms. Charney disputes in Response, [#36 at ¶ 28].

[10] The Parties dispute whether, in response, Ms. Charney was "confident that her injury occurred at 1:20 p.m." *Compare* [#28 at ¶ 29 (citing [#28-8 at ¶ 7])] *with* [#36 at ¶ 29 (citing [#36-1 and

26.     After meeting with Ms. Charney, and to verify that the incident occurred at 1:20 p.m., Ms. Eckman and Mr. Hock reviewed video surveillance footage, from August 7, 2017 and between 11:00 a.m. and 1:45 p.m., of the area near the deposit box.[11] [#28 at ¶ 30; #36 at ¶ 30; #28-8 at ¶ 8].

27.     The video revealed that Ms. Charney clocked out at 12:10 p.m.; went into the Safety Office at 12:11 p.m.; left the Safety office at 12:12 p.m., quickly passing the deposit box outside of the Safety Office and zipping up her vest with both hands before walking toward the cafeteria; returned from the cafeteria and entered the security cage at 12:34 p.m.; and left the security cage, looking into the lobby area before returning toward the security cage, at 1:23 p.m.[12] [#28 at ¶ 31; #28-8 at ¶ 9].

28.     The only point at which Ms. Charney was observed near the deposit box outside

---

stating that "Plaintiff has always stated that she was unsure of the exact time of the injury but put [1:20 p.m.] on the Statement because she was told to 'guess' by Mr. Ready")].

[11] Though Plaintiff objects and states that she "can neither confirm nor deny" this fact because "the video allegedly viewed by Mr. Hock and Ms. Eckman and the notes they allegedly took on the video are no longer in existence," [#36 at ¶ 30], the objection does not make this fact properly disputed. At summary judgment, the non-movant must come forward with specific facts, supported by admissible evidence, to demonstrate a disputed material fact and cannot simply rely on denials. Fed. R. Civ. P. 56(e) ("If a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may: . . . consider the fact undisputed for the purposes of the motion."). Conclusory statements or those based on speculation, conjecture, or surmise provide no probative value on summary judgment, *see Nichols v. Hurley*, 921 F.2d 1101, 1113 (10th Cir. 1990); nor may the nonmovant rely on "mere reargument of his case or a denial of an opponent's allegation," *see* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed. 1998). Ms. Charney did not raise this issue to the court during the course of discovery, and raised this issue for the first time at the Final Pretrial Conference held on July 27, 2020. [#46]. Since that time, Ms. Charney has not taken any further action with respect to this issue. The court plays a neutral role in the litigation process, and cannot assume the role of an advocate for the pro se party. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998). Accordingly, it concludes that this fact is undisputed.

[12] Ms. Charney states in Response that she "can neither confirm nor deny" this fact because "the video allegedly viewed by Mr. Hock and Ms. Eckman and the notes they allegedly took on the video are no longer in existence." [#36 at ¶ 31]. For the same reasons set forth above, *see supra* n.11, the court considers this fact uncontroverted.

the Safety Office was between 12:11 and 12:12 p.m., when she quickly passed the deposit box, zipped her vest using both hands, and walked toward the cafeteria.[13] [#28 at ¶ 32; #28-8 at ¶ 10].

29.     Approximately one to two weeks after the incident, Ms. Charney discussed with Ms. Eckman whether Ms. Charney's injured finger would require surgery.[14] [#28 at ¶ 33; #28-8 at ¶ 15].

30.     On August 23, 2017, Senior Human Resources Manager Ed Eget ("Mr. Eget"), Ms. Eckman, and Mr. Hock met with Ms. Charney regarding United's investigation into the circumstances of Ms. Charney's workplace injury. [#28 at ¶ 34; #36 at ¶ 34; #28-8 at ¶ 11].

31.     At that meeting, Ms. Charney was asked to detail her day leading up to and including her injury on August 7, 2017. [#28 at ¶ 35; #36 at ¶ 35; #28-8 at ¶ 11].

32.     Despite her previous statement that her injury occurred at 1:20 p.m., Ms. Charney stated at the August 23 meeting that her injury could have occurred at 1:40 p.m. or 2:20 p.m. and explained that she was wearing gloves at the time of injury and, thereafter, had not wanted to remove her left glove for fear of pain.[15] [#28 at ¶ 35; #36 at ¶ 35; #28-8 at ¶ 11].

33.     Mr. Eget, Ms. Eckman, and Mr. Hock asked Ms. Charney to leave the room to

---

[13] Ms. Charney states in Response that she "can neither confirm nor deny" this fact because "the video allegedly viewed by Mr. Hock and Ms. Eckman and the notes they allegedly took on the video are no longer in existence." [#36 at ¶ 32]. For the same reasons set forth above, *see supra* n.11, the court considers this fact uncontroverted.

[14] The Parties dispute the timing and nature of this conversation. United contends that Ms. Charney told Ms. Eckman that her finger would require surgery approximately one week after her injury. [#28 at ¶ 33]. Ms. Charney disputes this fact in her Response, arguing in part that "nearly two weeks to the day after the injury, Plaintiff notified Ms. Eckman that she expected x-rays at her next medical appointment to determine whether surgery was necessary." [#36 at ¶ 33 (citing [#36-1])]. I consider this factual dispute in greater detail in the next section, *infra* pages 15-20.

[15] United further notes that Ms. Charney testified at her deposition that she was wearing gloves at the time of the incident, including when she inserted the Gotcha Card into the deposit box, and did not remove the glove from her left hand until approximately 30 minutes thereafter. [#28 at ¶ 37 n.5 (citing [#28-2 at 158:7-9, 193:21-24])].

facilitate their review of video surveillance footage of the area near the deposit box from approximately 2:00 p.m. to 3:00 p.m. on August 7, 2017, when Ms. Charney first reported her injury to Mr. Hock.[16] [#28 at ¶ 36; #36 at ¶ 36; #28-8 at ¶ 12].

34.     At 2:44 p.m., Ms. Charney was observed leaving the security cage, looking into the Safety Office, possibly dropping a Gotcha Card into the deposit box outside the Safety Office, raising her right hand as if to put it in her mouth, and then opening one of two double doors.[17] [#28 at ¶ 37; #28-8 at ¶ 13].

35.     After reviewing the video surveillance footage, Mr. Eget, Ms. Eckman, and Mr. Hock invited Ms. Charney back into the room and showed her the portion of the video they had just reviewed. [#28 at ¶ 38; #36 at ¶ 38].

36.     Mr. Eget, Ms. Eckman, and Mr. Hock asked Ms. Charney to leave the room to

---

[16] In Response, although Ms. Charney states that she "agrees with the facts set forth in paragraph 36 of the Motion [for Summary Judgment]," she "adds" that "Mr. Hock, Mr. Eget and Ms. Eckman apparently failed to review all video footage from cameras available to them which would have corroborated Plaintiff's version of events[.]" [#36 at ¶ 36 (citing [#36-1])]. Ms. Charney's speculation that other video footage would support her account of the circumstances is insufficient to create a dispute of fact. *See supra* n.11.

[17] Ms. Charney states in Response that she "can neither confirm nor deny" this fact because "the video allegedly viewed by Mr. Hock and Ms. Eckman and the notes they allegedly took on the video are no longer in existence." [#36 at ¶ 37]. This alone is insufficient to create a dispute of fact for purposes of summary judgment, *see supra* n.11, but Ms. Charney further argues that screenshots of the video surveillance footage taken by United support her position. [*Id.*]. United contends that video footage from 2:44 p.m. also shows that Ms. Charney opened the double doors with both hands and wrapped the fingers of her left hand around the door to hold it open, [#28 at ¶ 37], and Ms. Charney disputes this fact with evidence. Specifically, Ms. Charney asserts that (a) of the two screenshots provided by Defendant during discovery with timestamps of 2:44 p.m., the only image that shows Ms. Charney with her left hand near the door clearly shows that her fingers are not wrapped around the door and "it is impossible to determine" from that image "that her hand is in contact with the door," and (b) another screenshot with a timestamp of 1:23 p.m. shows Ms. Charney wearing a blue glove on her left hand, [#36 at ¶ 37 (citing [#36-2])].

facilitate further discussion among them about the situation.[18] [#28 at ¶ 39; #36 at ¶ 39].

37.     After Ms. Charney left the room, Mr. Eget, Ms. Eckman, and Mr. Hock discussed (a) their concerns regarding inconsistencies in Ms. Charney's account of the incident, including her inconsistencies about the timeline of the incident, which finger had been injured, and her past comments about the injured finger; and (b) possible factual scenarios in an effort to validate Ms. Charney's claims. [#28 at ¶¶ 40-41; #36 at ¶¶ 40-41; #28-8 at ¶¶ 16-17].

38.     Mr. Eget, Ms. Eckman, and Mr. Hock were unable to establish a credible sequence of events or possible timeline that could show that Ms. Charney's injury occurred in the workplace. [#28 at ¶ 41; #36 at ¶ 41; #28-8 at ¶ 17].

39.     Mr. Eget, Ms. Eckman, and Mr. Hock concluded that Ms. Charney's injury did not occur in the workplace. [#28 at ¶ 40; #36 at ¶ 40; #28-8 at ¶ 16].

40.     At the end of the August 23 meeting, United revoked Ms. Charney's employee badge and advised Ms. Charney that she would be placed on administrative leave during its pending investigation of her workers' compensation claim. [#28 at ¶ 42; #36 at ¶ 42; #28-8 at ¶ 18].

41.     Upon completion of its investigation into Ms. Charney's alleged workplace injury, United concluded that Ms. Charney (a) did not put a Gotcha Card into the deposit box outside of the Safety Office at the time she provided, and (b) did not injure her left middle finger under the circumstances she described.[19] [#28 at ¶ 43; #28-8 at ¶ 19; #28-7].

---

[18] The Parties dispute whether, prior to leaving the room, Ms. Charney "admitted" that she had previously lied to Ms. Eckman about needing surgery on her injured finger—and further dispute whether this alleged lie ever occurred. [#28 at ¶ 39; #28-8 at ¶ 16; #36 at ¶ 39].  Again, United seeks to strike Ms. Charney's affidavit for allegedly conflicting with her deposition testimony. [#37 at ¶ 39 (citing *id.* at ¶ 33))].  This issue is addressed in detail in the following section.

[19] Ms. Charney disputes this fact by stating her inability to confirm the same, "add[ing]" that "Defendant's investigation was limited to three management personnel who viewed video footage

42.     On September 5, 2017, Ms. Eckman and Human Resources Manager Paula Reppas ("Ms. Reppas") met with Ms. Charney and presented her with a termination letter. [#28 at ¶ 44; #36 at ¶ 44; #28-7].

43.     In relevant part, the termination letter states the following:

On August 7, 2017, you reported an injury to your left, middle finger after putting a 'Gotcha' card into the box outside of the safety office. As with any workplace injury, a thorough investigation was done in order to prevent future injuries to others. During the investigation, it was determined with video footage and your statement, the injury did not happen like you said it happened. Video footage revealed you never placed a card in the box at the time you said the injury occurred. All United employees are governed by United's Working Together Expectations and United expects all employees to: [b]e truthful in all communications, whether oral, written or electronic, [and] [a]dher[e] to and reinforce[e] safety programs."

[#28 at ¶ 44; #36 at ¶ 44; #28-7].

44.     Ms. Charney was deposed on January 23, 2020. [#28-2].

45.     Ms. Charney testified that the only evidence she had to support her retaliatory discharge claim in this action was the timing of her termination and the fact that she was "doing [her] job." [#28 at ¶ 45; #36 at ¶ 45; #28-2 at 126:5-20].

46.     Ms. Charney testified that United terminated her in September 2017 for filing a workers' compensation claim, despite not doing so in July 2016 after she filed her first workers' compensation claim, because "due to the circumstances, due to the fact that I was doing my job, they needed to find a way to get rid of me." [#28 at ¶ 46; #36 at ¶ 46; #28-2 at 128:20-25].

47.     Ms. Charney further testified that she believes "parties within United Airlines didn't want [her] to do [her] job," but was unable to identify these "parties" when asked.  [#28 at ¶¶ 47-48; #36 at ¶¶ 47-48; #28-2 at 129:12-18].

---

that is no longer available," and "[i]t does not appear that any other individuals were interviewed to include other Security Agents and Safety Office personnel like Mr. Ready." [#36 at ¶ 43]. However, Ms. Charney fails to cite any evidentiary support for her argument. [*Id.*].

48.     United affords its employees an opportunity to appeal disciplinary actions, including terminations. [#28 at ¶ 49; #36 at ¶ 49; #28-2 at 12:2-6; #29 at 178].

49.     Ms. Charney did not appeal her termination. [#28 at ¶ 50; #36 at ¶ 50; #28-2 at 14:7-8].

## DISPUTED FACTS SUPPORTED BY PLAINTIFF'S AFFIDAVIT

United asserts that because Ms. Charney's affidavit is inconsistent with her deposition testimony, it "moves to strike the affidavit because it is an attempt to create a sham issue of fact." [#37 at ¶ 19 (citing *Wolfe v. US Bank Nat. Ass'n*, No. 11-cv-03111-REB-KLM, 2012 LEXIS 173106, at *9-10 (D. Colo. Dec. 5, 2012))].  Because "the utility of summary judgment . . . would be greatly undermined if a party could create an issue of fact merely by submitting an affidavit contradicting his own prior testimony," a court may disregard an affidavit that attempts to create a sham issue of fact.  *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986).  Given the impact on the evidentiary record, I find it appropriate at this juncture to consider whether Ms. Charney's averments do in fact contradict her deposition testimony.  Upon review of the excerpts of Ms. Charney's deposition testimony cited by United, this court is not convinced that her averments and testimony necessarily conflict.  I consider each of United's arguments to the contrary in turn.

***Plaintiff's Post-Injury Actions and Conversations on August 7.***  United argues that while Ms. Charney avers that per Mr. Hock's directions, "[she] immediately went to Safety Office [sic] where Ken . . ., the Safety Coordinator, was [and] stood at the doorway trying to re-enact how the injury occurred" although "Ken at the time was trying to leave as his shift had now ended [and] [h]e had no desire to look at [her] finger or hear the details," [#36-1 at ¶ 6], she did not testify at her deposition that she had attempted to re-enact the circumstances of her injury to Ken, nor to his unwillingness to look at her finger or hear her story, [#37 at ¶ 19 (citing [#37-2 at 191:10-16)].

Rather than contradict the deposition testimony cited by United, however, Ms. Charney's averments here simply provide additional details about the timeline of August 7. *Compare* [#37-2 at 191:10-16 (Q: "What is that?" A: "After reporting the incident to my manager, Brad Hock, he instructed I go to safety. I did. So somewhere I spoke with Ken. . . . ")] *with* [#36-1 at ¶¶ 5, 6 (explaining that Ms. Charney immediately attempted to reenact and share the details of her injury to the Safety Coordinator ("Ken"), who has trying to leave and had no desire to speak with her)].

***Nature of the August 23 Conversation.*** United also challenges Ms. Charney's averments related to her August 23 conversation with its investigators and again moves to strike her affidavit because it "conflicts in certain critical respects with Plaintiff's deposition testimony." [#37 at ¶ 38 (citing [#37-2 at 184:2-14, 208:12-209:2, 214:12-216:16])]. Specifically, United states that Plaintiff did not testify that, at the August 23 meeting, she advised its investigators about Mr. Ready's instructions to "just guess" or attempted to recall the time of her injury relative to her return to the Security Cage. [*Id.*].

The Parties dispute the nature of the conversation that occurred during Ms. Charney and investigators' review of the surveillance footage on August 23. [*See* Undisputed Material Facts ("UMF") ¶ 36]. For example, United contends that upon seeing herself raise her right hand, Ms. Charney stated, "see, that's when I hurt my hand," [#28 at ¶ 38; #28-8 at ¶ 14], while Ms. Charney avers that she instead said, "[s]ee, that is after I had hurt myself. I am not wearing any gloves," [#36 at ¶ 38 (citing [#36-1])]. When United asked why she bit her uninjured right hand, Ms. Charney explained that she had bitten down on her "good" hand in pain because her left hand was already injured. [#36 at ¶ 38 (citing [#36-1]); #28 at ¶ 38 ("Plaintiff advised that sometimes people bite the other hand when they injure themselves, not the hand they injured.") (citing [#28-8 at ¶ 14])]. According to United, Ms. Charney had "no response" to its questions about her ability to

hold the door open and lack of gloves as observed in the surveillance footage. [#28 at ¶ 38; #28-8 at ¶ 14].  According to Ms. Charney, she began to feel "ganged up on" as the three United employees questioned her integrity; asked the others why she would "want to put [her] injured finger in [her] mouth or anywhere near [her] face"; reiterated that she did not know the exact time of her injury, again explaining that it could have happened any time between 12:30 p.m. and 2:00 p.m.; reminded the investigators that she was wearing a glove when the injury occurred; and pointed out that the surveillance footage did not show Ms. Charney wearing gloves after 2:00 p.m. [#36 at ¶ 38 (citing [#36-1])].

But the allegedly contradictory excerpts of her deposition testimony cited by United do not foreclose Ms. Charney's elaborations regarding the August 23 meeting.  *See* [#37-2 at 208:12-209:2 (Q: "During your meeting on August 23, 2017, with Mr. Eget and Mr. Hick [sic] and Ms. Eckman, did you apologize for any reason?" A: "Not that I recall. . ."); *id.* at 214:12-216:16 (defense counsel asking questions about the August 23 meeting specifically related to Ms. Charney biting her hand in video footage, Ms. Charney's statement that she was not a liar, and investigators' response thereto)].  Nowhere in the cited excerpts of Ms. Charney's deposition does defense counsel ask Ms. Charney to identify every topic discussed during the August 23 meeting. *See id.*

Moreover, Ms. Charney's averment that she informed United investigators that her injury occurred sometime between 12:30 and 2:00 p.m. does not necessarily contradict with her testimony that she informed United investigators that she did not know the exact time of her injury. *Compare* [#37-2 at 184:2-25 (Q: "[Y]ou told Mr. Eget that you didn't know the exact time of your injury, correct?" A: "Correct." . . . Q: "You told [Mr. Hock, Mr. Eget, and Ms. Eckman] that similarly you simply didn't know the exact time you got hurt, correct?" A: "Correct.") *with* [#36-1 at ¶ 13 ("I repeated . . . that I was never confident as to what time the injury occurred but that it occurred

somewhere between 12:30 and 2:00."); *id.* at ¶ 16 ("I reiterated that 'I have already said that I do not know the exact time of my injury, . . . and explained that it could have happened anytime between 12:30 and 2:00 p.m.'")].  Defense counsel specifically asked Ms. Charney whether she informed investigators of the <u>exact time</u> of her injury, to which Ms. Charney testified that she did not know the exact time of her injury and told the investigators the same.  [#37-2 at 184:2-25].  Ms. Charney's subsequent clarification that she told investigators that she "<u>did not know the exact time</u> of [her] injury" but nevertheless informed them "<u>that it could have happened</u>" between 12:30 and 2:00 p.m. in no way conflicts with her prior testimony.  [#36-1 at ¶ 13 (emphasis added)].

*Plaintiff's Alleged August 23 Admission to Lying about Surgery.*  United also claims that Ms. Charney's averments, whereby she challenges the purportedly undisputed fact that Ms. Charney admitted during the August 23 meeting to lying to Ms. Eckman about needing surgery on her finger, are impermissibly contradictory.  [#37 at ¶ 33].  Ms. Charney disputes this fact in her Response, arguing that (a) United mischaracterized Mr. Hock's testimony as set forth in his affidavit, and (b) "nearly two weeks to the day after the injury, Plaintiff notified Ms. Eckman that she expected x-rays at her next medical appointment to determine whether surgery was necessary." [#36 at ¶ 33 (citing [#36-1])].  In relevant part, Mr. Hock avers that "Ms. Charney told us that she is not a liar and . . . then advised that the comment she had made to Ms. Eckman the prior week about needing surgery on the injured finger was a lie." [#28-8 at ¶ 15].

United points out in Reply that, to the extent Ms. Charney relies on her affidavit to support her assertion that she informed Ms. Eckman of anticipated x-rays to determine whether surgery was necessary, Ms. Charney did not testify about this information during her deposition. [#37 at ¶ 33 (citing [#37-2 at 208:12-209:2])].  On this basis, argues United, Ms. Charney's affidavit conflicts with her deposition testimony and should be stricken. [*Id.*].  But here again, the excerpt

cited by United does not necessarily conflict with Ms. Charney's averments that she informed Ms. Eckman of a potential need for surgery.  *Compare* [#37-2 at 208:12-209:2 (Q: "During your meeting on August 23, 2017 with Mr. Eget and Mr. Hick [sic] and Ms. Eckman, did you apologize for any reason?" A: "Not that I recall. I think I said something to Susan in regards to our conversation from two days previous." Q: "Tell me about that." A: "Well, I shared with her, my next follow-up I find out if I have to have surgery on my finger. . . . I thought I was supposed to disclose all information on how the recuperation of my finger was. So I shared the fact there is a 1 percent chance that I might have to have surgery, but I won't know until my next doctor appointment. But I don't believe I apologized for that.")] *with* [#36-1 at ¶ 11 ("Nearly two weeks to the day, [sic] of the injury I shared with Ms. Eckman that upon my next Dr. [sic] appointment the next set of x-rays would help determine if the finger was healing properly or would need surgery[.]")].

In sum, the affidavit appears to expand on Ms. Charney's deposition testimony or clarify it.  "Although an affidavit that contradicts earlier sworn testimony should be disregarded if it 'constitutes an attempt to create a sham fact issue,' that principle is not applicable when the deposition testimony is ambiguous and the affidavit assists in clarifying it." *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1258 (10th Cir. 2001) (quoting *Nimmo*, 796 F.2d at 1237) (internal citation omitted).  Ms. Charney's affidavit provides additional details about August 7, the subsequent investigation into the circumstances of her injury, and the August 23 meeting.  *See Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 956 n.3 (10th Cir. 2012) (explaining that an affidavit was not a sham where it provided more examples of racial hostility the plaintiff experienced but did not fully testify to in her deposition).  Even if some parts are inconsistent, they are not material to the court's decision here and do not justify disregarding the affidavit in its

entirety. *See Macias v. Sw. Cheese Co., LLC*, 624 Fed. Appx. 628, 632 (10th Cir. 2015) (affirming district court's decision to strike portions of an affidavit).   Accordingly, I conclude that Ms. Charney's foregoing averments are properly considered here.

## ANALYSIS

### I.     Applicable Analytical Framework

At the outset, though not outcome determinative in the instant action, the court must determine what analytical framework to apply to Plaintiff's claim given the Parties' disagreement. Ms. Charney argues that the *McDonnell-Douglas* burden-shifting framework should apply, affording her certain inferences, [#36; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)], while United argues that "in order to survive summary judgment, Plaintiff must 'present evidence that [her] termination was causally connected to [her] filing for benefits under workers' compensation,'" [#28 at 11 (quoting *Baros*, 2010 WL 1416812, at *6)].

As recently recognized, Colorado precedent does not clearly define the analytical framework applicable to a wrongful discharge claim. *See Donez v. Leprino Foods, Inc.*, No. 19-cv-00185-CMA-NRN, 2020 WL 1914958, at *5-6 & n.4 (D. Colo. Apr. 20, 2020) (granting summary judgment to employer on employee's wrongful discharge claim premised on employee's exercise of right to workers' compensation benefits) (citing *Wehrley*, 513 F. App'x at 744). *See also Wehrley*, 513 F. App'x at 744 ("Colorado's case law regarding this claim is not well developed, but the claim at the very least requires evidence of a causal connection between the exercise of workers' compensation rights and the firing.") (citing *Lathrop*, 770 P.2d at 1372-73). In *Donez*, the court applied the *McDonnell-Douglas* burden-shifting framework to the plaintiff's wrongful discharge claim because the plaintiff cited to and relied on *Metzler v. Federal Home Loan Bank of Topeka*, 464 F.3d 1164 (10th Cir. 2006), but noted that it would reach the same

conclusion—that the defendant employer was entitled to summary judgment—upon considering whether a rational jury could find causation under the totality of evidence before the court. *Donez*, 2020 WL 914958, at *6 n.4 (citing *Wehrley*, 513 F. App'x at 744). *Cf. Wehrley*, 513 F. App'x at 744 (granting summary judgment on employee's wrongful discharge claim in employer's favor where employee had introduced insufficient evidence of causation to overcome the defendant's stated reason for termination); *Anderson v. Royal Crest Dairy, Inc.*, 281 F. Supp. 2d 1242, 1250 (D. Colo. 2003) ("[T]he issue on summary judgment is whether [plaintiff] has come forward with sufficient evidence to create a triable issue of fact as to the retaliatory motivation."); *Angell v. Fairmount Fire Protection Dist.*, 907 F. Supp. 2d 1242, 1256 (D. Colo. 2012) (same).

United argues that *McDonnell-Douglas* is inapplicable to Ms. Charney's state law claim, [#37 at 4 (citing *Baros*, 2010 WL 1416812, at *6)], and asserts that her reliance on *Wehrley* and an unpublished opinion from the Colorado Court of Appeals is misplaced because those cases involved federal discrimination and/or retaliation claims, [*id.* at 5].[20]  This court is not persuaded by the distinction United attempts to draw.  Even the case on which United relies to support its argument, *Baros*, 2010 WL 1416812, cites to cases applying *McDonnell-Douglas* to federal discrimination and/or retaliation claims.  *Id.* at *8 (citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (applying *McDonnell-Douglas* to the plaintiff's FLSA and FMLA retaliation claims); *Marx v. Schnuck Markets, Inc.*, 76 F.3d 324, 329 (10th Cir. 1996) (applying "motivating factor" test to the plaintiff's FLSA retaliation claim)).  *See also id.* at *6 (quoting *Jackson v. Dillard's Dept. Stores, Inc.*, 92 F. App'x 583 (10th Cir. 2003) (citing *ONEOK*, 120 F.3d at 209 and noting lack of temporal proximity to give rise to causal inference and absence of any other

---

[20] In her Response, Ms. Charney cites *Silva v. Accommodations in Mt. Vill., Inc.*, 2020 Colo. App. LEXIS 839 (Colo. App. Apr. 23, 2020), an unpublished opinion from the Colorado Court of Appeals.

evidence to support a causal connection between the plaintiff's workers' compensation claim and discharge)).    Moreover, contrary to United's assertion that *Wehrley* "involved discrimination/retaliation claims brought under the ADA and Family Medical Leave Act and obviously has no application to this case," [#37 at 5], *Wehrley* also involved a plaintiff's wrongful discharge claim premised on retaliation for the exercise of workers' compensation rights and included a robust discussion as to what evidence was necessary to overcome summary judgment, *see* 513 F. App'x at 743-44.

Nor is it clear that the other authority United cites establishes that the *McDonnell-Douglas* framework is inapposite.  [#28 at 17 (citing *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006) and *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) as "indicating" that periods "between protected activity and adverse action" of twenty-four days and six weeks, respectively, give rise to "a rebuttable inference of a causal connection") (emphasis in original)].  In *Argo*, the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") found that the employee had easily satisfied his prima facie case of retaliation in part because the close temporal proximity between the employee's complaint and termination supported an inference of causal connection.  452 F.3d at 1202.  In the *very next sentence* of the opinion, the court explained that "[t]he burden therefore shifts to [the employer] to articulate a legitimate, nondiscriminatory reason for the discharge." *Id.*   Finding that the employer had satisfied this burden, the *Argo* court explained that "the burden shifts back to [the employee] to demonstrate that the proffered explanation is a pretext for retaliation." *Id.* at 1203.   *See also Anderson*, 181 F.3d at 1179 (affirming summary judgment on employee's retaliation claim because "assuming [the temporal proximity] is sufficient to support a prima facie case of retaliation, Plaintiff cannot prove that Defendant's proffered reason for terminating her was

pretextual").

And although United concludes that "the pretext analysis offered throughout Plaintiff's Response is erroneous and should be rejected," [#37 at 5], here again the case law relied on by United fails to support its position. *See Baros*, 2010 WL 1416812, at *8 ("Based on the foregoing, Defendant has presented evidence that its stated reasons for terminating Plaintiff were not pretextual.") (emphasis added). *See also id.* (citing *Jackson*, 92 F. App'x at 585, 588 n.6 (affirming summary judgment on wrongful discharge workers' compensation claim where the employer "maintain[ed] it terminated [the employee for a non-retaliatory reason], and its actions were not pretextual" and noting the lack of temporal proximity to support a casual inference); *ONEOK*, 120 F.3d at 209 (affirming grant of summary judgment on FMLA retaliation claim because employee "did not carry her burden of showing that [the employer]'s proffered reasons for her dismissal were pretextual")).

Considering the weight of authority before it,[21] I find it appropriate to analyze Ms. Charney's wrongful discharge claim under the *McDonnell-Douglas* framework. *See, e.g., Singh v. Cordle*, 936 F.3d 1022, 1042 (10th Cir. 2019) (the same *McDonnell-Douglas* framework applies to both Title VII discrimination and retaliation claims). Thus, Plaintiff bears the initial burden of demonstrating her prima facie retaliatory discharge case. *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 969 (10th Cir. 2017). The burden then shifts to Defendant to proffer a legitimate,

---

[21] The court notes that Ms. Charney asserts the *McDonnell-Douglas* framework and case law applying the same to retaliation claims, *see, e.g.*, [#36 at ¶ 61 (citing *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995)); *id.* at ¶ 62 (quoting *Wells v. Colo. DOT*, 325 F.3d 1205, 1218-19 (10th Cir. 2003))], but also cites to and relies on *Wehrley*, which did not rely on the burden-shifting framework, *see, e.g.*, [*id.* at ¶ 59 (quoting *Wehrley*, 513 F. App'x at 741)]. Moreover, while United faults Ms. Charney's reliance on authority involving federal retaliation claims and attempts to distinguish on the same basis, the authority cited in its Motion and Reply also involves federal retaliation and/or discrimination claims and, in many cases, applies the *McDonnell-Douglas* framework. *See supra.*

nonretaliatory reason for her termination. *Id.* at 970.   The burden on Defendant here is "exceedingly light." *Id.*  Finally, the burden shifts back to Plaintiff to demonstrate that Defendant's proffered reason is a pretext for retaliation. *Id.*  Plaintiff bears the ultimate burden of persuasion, *id.* at 969, and summary judgment is appropriate if Plaintiff fails to show pretext, *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005).[22]

## II.   Prima Facie Case of Retaliatory Discharge

The first two elements of Ms. Charney's prima facie claim are not in dispute.   United challenges only the third element, arguing that Ms. Charney cannot show a causal connection between the filing of her workers' compensation claim and her termination. [#28 at 12].  However, United all but concedes that the period of time between the filing of Ms. Charney's workers' compensation claim and her termination is sufficiently close temporal proximity to give rise to a rebuttable inference of causation.  [*Id.* at 17].  Ms. Charney argues that less than a month transpired between the exercise of her job-related right and subsequent termination and asserts further that "the investigation and placement on administrative leave amounted to an adverse action that shortens even more the time frame." [#36 at ¶ 66].   Indeed, a "retaliation plaintiff may rely solely on temporal proximity to show causation during the prima facie stage of the *McDonnell Douglas* framework," and a one-month period sufficiently establishes causation for the purposes of a prima facie case.  *Foster v. Mt. Coal Co., LLC*, 830 F.3d 1178, 1191 (10th Cir. 2016) (citing *Anderson*, 181 F.3d at 1179).  *See also Donez*, 2020 WL 1914958, at *6 (applying *McDonnell-Douglas* test to retaliatory discharge claim premised on right to workers' compensation and finding that temporal proximity satisfied employee's burden on causation element of prima facie stage of

---

[22] But like the *Donez* court, I find that it is appropriate to articulate that I would reach the same result as to causation under a totality of evidence inquiry. *Donez*, 2020 WL 914958, at *6 n.4.

inquiry).  Accordingly, Ms. Charney has satisfied her prima facie case for retaliatory discharge.

### III.  Legitimate, Nonretaliatory Reason for Termination

United maintains that Ms. Charney was terminated because she falsified the circumstances of her alleged workplace injury in violation of company policies. [#28 at 11].  Ms. Charney concedes the legitimacy of United's proffered reason for terminating her employment, [#36 at ¶ 64], and it has evidentiary support in the record, *see, e.g.*, [UMF ¶¶ 4-8, 37-43].  Specifically, United has provided evidence to support its assertion that Ms. Charney violated company policies requiring employees to "be truthful in all communications," "act in ways that reflect favorably upon the company," "use good judgment and open communication in all decisions," and "immediately report any workplace injury . . . to [the employee's] supervisors . . . at the time of occurrence," [UMF ¶¶ 4-8], when she reported the circumstances of her workplace injury inaccurately [*id.* at ¶¶ 18-21, 25-28, 31-32].

It is undisputed that Ms. Charney identified 1:20 p.m. as the time of injury on her Statement, and that the time she provided was inaccurate. [*Id.* at ¶¶ 18-21].  And there is no dispute that United investigators attempted to verify the circumstances of Ms. Charney's injury as represented in her Statement by reviewing video surveillance footage of the area from the time of her alleged injury.  [*Id.* at ¶¶ 25-28].  When surveillance footage instead showed that Ms. Charney's injury did not occur at 1:20 p.m., United investigators sought additional details from Ms. Charney regarding the circumstances of her injury on August 23.  [*Id.* at ¶¶ 30-33].  At this meeting, and contrary to her original Statement, Ms. Charney explained that her injury could have occurred at a different time. [*Id.* at ¶ 32].  She also told investigators that she was wearing gloves at the time of injury and continued to wear a glove on her injured left hand for thirty minutes thereafter for fear that removing the glove would be painful. [*Id.*].

At the conclusion of its investigation, United determined that Ms. Charney did not put a Gotcha Card into the deposit box outside of the Safety Office at the time she provided in her Statement and did not injure her left middle finger in the manner she described. [*Id.* at ¶¶ 37-43]. Ms. Charney thereby violated United's truthfulness policy set forth in its WTG and policies therein requiring employees to act in ways that reflect favorably on United, use good judgment, and use open communication in all decisions [*id.* at ¶¶ 4-6]; and requirements set forth in United's Employee's Guide to Workers' Compensation to timely report any workplace injury to her supervisor (Mr. Hock) [*id.* at ¶ 7].   The termination letter presented to Ms. Charney on September 5, 2017, states in relevant part:

> On August 7, 2017, you reported an injury to your left, middle finger after putting a 'Gotcha' card into the box outside of the safety office. As with any workplace injury, a thorough investigation was done in order to prevent future injuries to others. During the investigation, it was determined with video footage and your statement, the injury did not happen like you said it happened. Video footage revealed you never placed a card in the box at the time you said the injury occurred. All United employees are governed by United's Working Together Expectations and United expects all employees to: [b]e truthful in all communications, whether oral, written or electronic, . . . [and] [a]dher[e] to and reinforc[e] safety programs.

[*Id.* at ¶ 43].   United has thus met its burden to proffer a legitimate, nonretaliatory reason for Ms. Charney's termination.   I turn now to consider whether a rational jury could reasonably conclude that Ms. Charney has demonstrated that United's explanation is a pretext for retaliation.

## IV.    Pretext for Retaliation

Ms. Charney argues in part that the close temporal proximity between her workers' compensation claim and termination "by itself is sufficient to show a retaliatory motive." [#36 at ¶ 66].   The court disagrees.   "Although [courts in the Tenth Circuit] may consider evidence of temporal proximity—typically used to establish a prima facie case—in analyzing pretext, temporal proximity alone is insufficient to raise a genuine issue of material fact concerning pretext." *DePaula*, 859 F.3d at 976 (quoting *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1213 (10th Cir.

2007)).  In other words, temporal proximity can support a finding of pretext only when combined with additional evidence of pretext.  *Id.* (quoting *Metzler*, 464 F.3d at 1172 ("To raise a fact issue of pretext, [the plaintiff] must . . . present evidence of temporal proximity *plus* circumstantial evidence of retaliatory motive.")).  *See also Donez*, 2020 WL 1914958, at *5-6 (applying the framework set forth in *Metzler* to an employee's wrongful discharge claim premised on exercise of right to workers' compensation).  Thus, I consider whether Ms. Charney has presented circumstantial evidence of United's retaliatory motive.

Here, United argues that the evidence irrefutably demonstrates that Ms. Charney's falsification of the circumstances surrounding her workplace injury was the sole reason for her termination. [#28 at 17-18].  Ms. Charney "believes the actual reason for [her] termination was the filing of [her] workers' compensation claim . . . and that the Defendant's stated reason was merely pretextual." [#36 at ¶ 64].   "Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997). "The relevant inquiry is not whether [the employer's] proffered reasons were wise, fair or correct, but whether [it] honestly believed those reasons and acted in good faith upon those beliefs." *Rivera v. City and Cty. of Denver*, 365 F.3d 912, 924 (10th Cir. 2004).

***Ms. Charney's Employment Record and Lack of Motive to Lie***.  To show pretext, Ms. Charney first argues that she (a) lacks a disciplinary history; (b) had a good work record and performed her job well; (c) lacked motive to lie about the source of her injury because she was insured through Medicaid; and (d) continued to work after her injury, undercutting any suggestion

that she was using her injury as a pretense to take time off. [#36 at ¶ 65].  United replies that the foregoing issues are irrelevant and do not constitute evidence of a causal connection between Ms. Charney's workers' compensation claim and her termination. [#37 at 6].  Upon review of the record before it, this court concludes that nothing about United's proffered explanation for Ms. Charney's termination is inconsistent with or undercut by evidence of her work performance, disciplinary history, lack of motive, or truthfulness unrelated and prior to the alleged workplace injury.

*The Adequacy of United's Investigation.*   Ms. Charney also argues that "[w]hile the Defendant claims that its investigation was thorough, the evidence indicates otherwise." [#36 at ¶ 67].  Specifically, Ms. Charney asserts that United considered in its investigation only "one surveillance video and the interviews of the Plaintiff"; "made no effort to interview or take statements form [sic] other employees"; failed to review all of the surveillance videos available to it at the time of investigation, at the exclusion of videos which could have corroborated Ms. Charney's version of events; and failed to preserve these videos or any related notes. [23] [*Id.*].

Respectfully, Ms. Charney misses the mark with these arguments.  Certainly, the record before the court leaves open the possibility that Ms. Charney was fired on an ultimately mistaken belief that, even after her undisputedly inaccurate Statement, she continued to fabricate the circumstances surrounding her injury.  And an employer's "failure to conduct what appeared to be

---

[23] United argues that any causal inference created by the four-week period between Ms. Charney filing a workers' compensation claim and her termination is "decisively rebutted" by the undisputed facts that (1) her injury did not occur at the time indicated in her Statement or represented to Ms. Eckman and Mr. Hock; (2) there were multiple inconsistencies in Ms. Charney's version of events; and (3) surveillance video showed Ms. Charney not wearing gloves during the relevant time period despite her representation to investigators that she was wearing gloves at the time of injury. [#28 at 17].  However, for the reasons discussed above, this court concludes the only fact proffered by United as "rebuttal evidence" here that is undisputed is the fact that Ms. Charney's Statement included an inaccurate time of injury.

a fair investigation of the violation that purportedly prompted adverse action may support an inference of pretext." *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 536-37, 542 (10th Cir. 2014) (finding inference of pretext where plaintiff was denied an opportunity to explain his role in a dispute with another employee and decision-makers obtained and "relied heavily" on the other employee's version of events in deciding to terminate the plaintiff); *Trujillo v. PacifiCorp*, 524 F.3d 1149, 1160 (10th Cir. 2008) (finding inference of pretext where longtime employee plaintiffs were "never given the benefit of the doubt during the investigation" and the employer "seemingly relied only on evidence to the [plaintiffs'] detriment" and "failed to interview key witnesses"). *Cf. Seastrand v. U.S. Bank N.A.*, 807 F. App'x 882, 891 (10th Cir. Apr. 20, 2020) (unpublished) (no inference of pretext from investigation where the plaintiff was an ongoing part of the investigation and acknowledged his role in the circumstances leading to his termination).

Here, Ms. Charney's pretext challenge requires the court to look at the facts as they appeared to the individuals making the decision to terminate her—and even those decision-makers' mistaken belief can be a legitimate reason for her termination and is not necessarily pretextual. *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1231 (10th Cir. 2000) (considering pretext in context of a 42 U.S.C. § 1981 discrimination claim). Indeed, even though Charney's version of events could be consistent with an injury occurring between 1:45 and 2:00 p.m.—the time period for which no surveillance footage was reviewed by United—"[s]he is not entitled to a determination of whether [s]he was dishonest; rather, [s]he is entitled only to a determination of whether the [investigators] could reasonably have thought so." *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 717 (10th Cir. 2014) (citing *Rivera*, 365 F.3d at 924-25) (applying *McDonnell-Douglas* framework to workers' compensation retaliation claim under Kansas law and finding that plaintiff failed to demonstrate pretext); *Estate of Bassatt v. Sch. Dist. No. 1 in the City*

29

*and Cty. of Denver*, 775 F.3d 1233, 1241 (10th Cir. 2014) ("[T]he relevant inquiry is whether [Defendant] subjectively, but honestly, believed that [Plaintiff] had engaged in misconduct.").

Even assuming that United conducted an imperfect investigation and additional evidence (not before this court) would show that Ms. Charney was in fact injured at work sometime between 12:30 and 2:00 p.m., it is still undisputed that Ms. Charney reported an inaccurate time of injury on her Statement on the date of her injury. [UMF ¶¶ 18-21]. Thus, contrary to Ms. Charney's assertions, whether she was injured at the time identified in her Statement is not "a genuine issue of material fact that should be considered at trial." [#36 at ¶ 75]. As United points out in Reply, it is undisputed that Ms. Charney included an inaccurate time of injury in her Statement, for which she was responsible, and was aware at the time of its completion and submission that United requires its employees to be truthful. [UMF ¶¶ 18-21]. Indeed, during her deposition Ms. Charney explicitly confirmed the inaccuracy of the time she provided in her Statement. [*Id.* at ¶ 20]. That United investigators, upon confirming that the time originally reported by Ms. Charney was false, still made some effort to ascertain the actual time of injury prior to terminating her does not render United's reason for terminating Ms. Charney pretextual. *See Brown v. Keystone Learning Servs.,* 804 F. App'x 873, 880 (10th Cir. 2020) (observing that even if a reasonable jury could infer the decisionmaker's statement was incorrect, it does not undermine defendant's legitimate, nondiscriminatory reason for not hiring plaintiff).

Moreover, Ms. Charney has not set forth any evidence controverting the facts that Mr. Eget, Ms. Eckman, and Mr. Hock discussed (a) their concerns regarding inconsistencies in Ms. Charney's account of the incident, including her inconsistencies about the timeline of the incident, which finger had been injured, and her past comments about the injured finger; and (b) possible factual scenarios in an effort to validate Ms. Charney's claims [UMF ¶ 37]; were unable to

establish a credible sequence of events or possible timeline that could show that Ms. Charney's injury occurred in the workplace [*id.* at ¶ 38]; and concluded (even if ultimately in error) that Ms. Charney's injury did not occur in the workplace [*id.* at ¶ 39]. She does not offer any sworn statements from Mr. Woledemiariam or Mr. Ready indicating that they provided information to United that would undercut United's proffered legitimate reason for termination. Nor does she adduce evidence that United offered inconsistent reasons for her termination. Instead, Ms. Charney claims that United's stated reason for terminating her employment is inconsistent with her own explanation as to *why* she was justified in violating United policies (i.e., no clocks available, instruction from Mr. Ready). This is not enough to demonstrate pretext. *See Robinson v. St. John Med. Ctr., Inc.*, 645 F. App'x 644, 650 (10th Cir. Apr. 13, 2016) (unpublished) (no pretext shown by allegedly inadequate investigation in which plaintiff was a participant and did not dispute that she engaged in conduct underlying the investigation and ultimate termination of plaintiff); *Hysten v. Burlington N. Santa Fe Ry. Co.*, 372 F. Supp. 2d 1246, 1256-57 (D. Kan. 2005) (finding no pretext where plaintiff argued that (1) he did not violate company rules via inability to declare how he sustained injury; and (2) employer refused to consider subsequent meetings with plaintiff at which he explained why he could not positively identify where his back injury had occurred).

Finally, even assuming Ms. Charney was correct when she testified that she was terminated "for doing her job," [#28-2 at 128:20-25 (Q: "So tell me then, why would United Airlines terminate you in September of 2017 for filing a workers' compensation claim when it didn't do so in 2016?" A: "Due to the circumstances, due to the fact that I was doing my job, they needed to find a way to get rid of me."), 129:9-11 (Q: "Do you believe United Airlines didn't want you to do your job?" A: "I believe parties within United Airlines didn't want me to do my job.")], that does not establish

that United terminated Ms. Charney for exercising her worker's compensation rights.  Instead, it suggests that her invocation of worker's compensation rights was wholly irrelevant to United's decision to terminate her.  In sum, Ms. Charney has failed to produce evidence to create a genuine issue of material fact on the issue of pretext, and thus, has failed to meet her burden.  Accordingly, her claim for retaliatory discharge cannot survive summary judgment.

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1)    Defendant's Motion for Summary Judgment [#28] is **GRANTED**;

(2)    Summary judgment shall enter in **FAVOR** of Defendant and **AGAINST** Plaintiff, and Ms. Charney's retaliatory discharge claim is **DISMISSED with prejudice**;

(3)    Final Judgment shall enter in **FAVOR** of United and **AGAINST** Ms. Charney;

(4)    Defendant, as the prevailing party, shall be awarded its costs pursuant to Rule 54(d)(1) of the Federal Rules of Civil Procedure and D.C.COLO.LCivR 54.1;

(5)    The four-day jury trial set to commence on **April 12, 2021** is **VACATED**; and

(6)    The Clerk of the Court shall **TERMINATE** this matter accordingly.


DATED:  November 2, 2020                       BY THE COURT:

                                               Nina Y. Wang
                                               United States Magistrate Judge